United States District Court
District of Connecticut

| | |
|---|---|
| **Libertarian Party of Connecticut**, | : |
| | : |
| *Plaintiff*, | : |
| | : |
| *v.* | : |
| | : Civil No. 3:15-cv-1851-JCH |
| **Denise Merrill, Secretary of the State of Connecticut**, | : |
| | : |
| *Defendant*. | : |
| | : JANUARY 19, 2016 |

**Reply in Support of Plaintiff's Motion for a
Temporary Restraining Order and Preliminary Injunction**

**I.     The Secretary does not even attempt to show how Connecticut's residency requirement for petition circulators satisfies strict scrutiny**.

The Secretary's opposition concedes, as it must, that the Party's opening brief "has set forth an accurate description of the legal framework" applicable to this First Amendment challenge. ECF 20 at 9. But the Secretary then proceeds to ignore that framework entirely. The Secretary fails to acknowledge settled precedent holding that restrictions on petition circulation inhibit "core political speech" and must satisfy strict scrutiny. *Lerman v. N.Y.C. Bd. of Elections*, 232 F.3d 135, 146, 148-49 (2d Cir. 2000) (applying strict scrutiny and striking down requirement that circulators be residents of the district for which they collect signatures).[1] The Secretary also ignores the nearly unanimous string of recent Courts of Appeals precedent holding materially

---

[1] Inexplicably, the Secretary cites *Lerman* as a case in which "the Second Circuit declined to strike down a New York residency requirement for petition circulators." ECF 20 at 8. That, however, is not at all what *Lerman* held. The *Lerman* Court concluded that a New York "witness residence requirement" mandating that circulators be residents of the *district* for which they collect signatures "severely burden[ed] interactive political speech and association rights protected by the First Amendment." *Id.* at 139. The Court thus struck down this "statutory requirement [as] unconstitutional on its face." *Id.* The *Lerman* Court had no occasion to reach the constitutionality of New York's *in-state* residency requirement, because the plaintiffs in *Lerman* did not raise any challenge to that statute. *Id.* at 150 n.14.

identical in-state residency requirements unconstitutional.  *See* ECF 19 at 7-8, 10 (citing cases from the 4th, 6th, 7th, 9th, and 10th Circuits).  And the Secretary makes no attempt to show how Connecticut's in-state residency statute satisfies the most demanding standard known to First Amendment law—strict scrutiny—a test requiring "the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest."  *See Ariz. Free Enter. Club v. Bennett*, 131 S. Ct. 2806, 2817 (2011).

Instead, the Secretary attempts to defeat the Party's Motion for a Temporary Restraining Order and Preliminary Injunction by deflecting attention away from the unconstitutional statute at issue and instead focusing on other provisions of the State's electoral regime and past complaints received by the State Elections Enforcement Commission ("SEEC") that are irrelevant here.  The Court should reject these arguments and grant the Motion.

**II.     None of the Secretary's claims is sufficient to save Connecticut's unconstitutional statute.**

**A.     The Secretary's reliance on other, purportedly "generous" provisions of Connecticut law is irrelevant.**

The Secretary spends page after page of her brief extolling the virtues of "Connecticut's overall electoral scheme," its "inclusive electoral process," and its purportedly "generous minor party provisions," as if these other statutes somehow justify the Secretary's enforcement of the plainly unconstitutional residency requirement that the Party challenges here. ECF 20 at 2-6. The Secretary, however, does not cite any authority to support her argument that the existence of "generous" laws permitting some speech somehow justifies an unconstitutional statute that restricts core political speech by petition circulators.  In fact, the Supreme Court has "consistently refused to overlook an unconstitutional restriction upon some First Amendment activity simply because it leaves other First Amendment activity unimpaired."  *See Cal. Dem. Party v. Jones*, 530 U.S. 567, 581 (2000); *Buckley v. Am. Const'l L. Found., Inc.*, 525 U.S. 182,

195-96 (1999) (requirement that petition signers be registered to vote, rather than merely eligible to register, is not saved by the fact that registering to vote is "exceptionally easy"); *Krislov v. Rednour*, 226 F. 3d 851, 860 (7th Cir. 2000) (election law that requires "only a relatively small number of signatures" can severely burden First Amendment rights if "it also precludes a candidate from utilizing a large class of potential solicitors to convey his message").

The Secretary also misses the mark when she argues that the Party's "history of success in attaining ballot access" demonstrates that the residency requirement imposes only a "minimal burden."  ECF 20 at 5.  Again, the Connecticut statute at issue here restricts "core political speech" and is subject to strict scrutiny; it is not a mere ballot-access provision subject to a general weighing of the burdens it imposes.  *Lerman*, 232 F.3d at 146; se*e McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 345 (1995) (declining to apply severe/lesser burdens balancing test to direct regulation of "pure speech"). The Party's past "success" in attaining access to the ballot does nothing at all to show that the residency requirement is narrowly tailored to serve any compelling state interest.[2]

Moreover, regardless of the amount of "success" the Party has had in placing candidates on the ballot, the residency requirement does hamper its efforts.  It forces the Party to allocate more of its limited temporal and financial resources to petitioning and less to campaigning than would otherwise be the case, and it has a chilling effect on potential candidates who are dissuaded from running by the arduous petitioning process.  (ECF 15 ¶ 29.)  Such a chilling effect is a classic First Amendment injury.  *See Buckley*, 525 U.S. at 193; *see also id*. at 210 (Thomas, J., concurring) (restriction on petition circulation severely burdens speech because it

---

[2]   The Party intends to run a candidate for the 2016 Presidential election, and the residency requirement is preventing it from using out-of-state circulators to gather signatures, which it wishes to do.  *See* Decl. of A. Rule, Jan. 19, 2016.

"reduces the voices available to convey political messages"). The Court should grant the motion and strike down Connecticut's attempt to squelch core political speech by minor parties.

> **B.     Connecticut's residency requirement is not narrowly tailored to address voter fraud or any other state interest.**

The Secretary also makes two arguments in an attempt to show that the residency requirement is justified by historical electoral practices in the state. First, she presents evidence, through the affidavit of an SEEC staff attorney, which she asserts demonstrates a pattern of problems with out-of-state circulators. Second, the Secretary argues that the frequency of litigation challenging her rulings on which candidates can be placed on the ballot, and the short time period in which that litigation must occur, creates a real risk that an out-of-state circulator will not be available to testify. Neither of these arguments establishes that the residency requirement is narrowly tailored to serve any compelling state interest.

> 1.   *The SEEC rulings cited by the Secretary are largely irrelevant and, in any event, plainly fail to show that Connecticut's in-state residency requirement is narrowly tailored.*

The Secretary presents evidence in the form of five SEEC rulings that purportedly show a need to limit the circulator pool to Connecticut residents. Tellingly, not one of these five rulings stemmed from a party's attempted use of out-of-state circulators to certify a ballot petition. The first, a complaint against Richard Rhatigan, is the only one that even tangentially deals with out-of-state circulators. There, the respondent, a Stratford resident, "signed . . . hundreds of petition pages with signatures that he had not gathered or witnessed." ECF 20-2 ¶ 4. Those signatures had apparently been gathered by college students from out-of-state. *Id.* ¶ 3.[3] The Rhatigan ruling does not demonstrate a danger associated with allowing out-of-state circulators—having someone who did not personally witness the signatures certify the petition would be just as

---

[3]   The SEEC Consent Order does not state whether any of those college students were registered to vote in Connecticut.

improper had the circulators been Connecticut residents.  In fact, that is exactly the scenario in the Lombardi ruling, in which a Connecticut resident certified petitions even though he did not personally circulate them and witness the signatures on them.  ECF 20-4 ¶¶ 3-4.  If anything, the Rhatigan ruling demonstrates a flaw in the State's petition regime—had the out-of-state circulators been permitted to certify their petitions, there would have been accountable witnesses for each of them.

The Russo ruling actually provides support for the Party's argument concerning the burden imposed by the residency requirement.  In that case, the SEEC ruled that a circulator can only certify that a signature was made "in his presence" if the circulator is holding the clipboard with the petition page at the moment that the signator signs it.  ECF 20-5 ¶¶ 11-15.  This interpretation of the "presence" requirement in the statute is part of the reason why forcing out-of-state circulators to work in tandem with a state resident is cumbersome and inefficient.  *See* ECF 15 ¶¶ 22-23.  The professional circulator cannot actually receive the signature of the voter he or she has just convinced to sign the petition, but must instead direct the voter to the state resident, who is holding the clipboard.[4]  None of these rulings comes remotely close to meeting Connecticut's burden to show that its in-state residency requirement is narrowly tailored to meet a compelling interest in preventing fraud or assuring access to witnesses.

    2.    *The Secretary's logistical concerns also fail to satisfy strict scrutiny.*

---

[4] The other rulings are simply irrelevant to the constitutionality of the statute.  In the Schiff ruling, ECF 20-3, the SEEC investigated a campaign for allegedly using three out-of-state circulators.  Two of them were determined to be Connecticut electors, and there was no evidence to demonstrate that the third actually circulated any petitions.  At most, the Schiff ruling is an example of a failed attempt to enforce the residency requirement where it was not even violated.

In the Reale ruling, ECF 20-6, the SEEC simply determined that the Secretary of State had correctly determined that the Party's candidates had been kept off of ballots in 2008 and 2010, ruling that the Party had not collected sufficient signatures.  The ruling does not address the question of who circulated the petitions or why the signatures were deemed invalid.

The Secretary also argues that allowing out-of-state circulators to witness petition signatures would cause logistical difficulties in the adjudication of lawsuits that are "invariably" brought "in the weeks leading up to the November elections each year seeking judicial relief to have [a candidate's] name placed on the ballot or objecting to the same." ECF 20 at 13.  But, as numerous courts have recognized, state governments have at their disposal much more narrowly tailored means of ensuring that petition circulators are available as witnesses:  Instead of banning out-of-state circulators, a state may simply require each circulator to provide contact information, to promise to return in the event of a dispute, and to submit to the subpoena power of the state. *See* ECF 19-1 at 7-8, 10; *see, e.g.*, *Yes on Term Limits, Inc. v. Savage*, 550 F.3d 1023, 1030 (10th Cir. 2008) ("requiring non-residents to sign agreements providing their contact information and swearing to return in the event of a protest is a more narrowly tailored option").  Given the availability of this much less restrictive alternative, Connecticut's in-state residency requirement plainly fails to satisfy strict scrutiny.

In any event, the Secretary's argument conveniently buries a key fact—it is the *Party*, not the State, that puts itself at risk if its circulators are not available to testify in a dispute concerning the validity of signatures.  If the circulator is needed as a witness to confirm that the signatures were gathered properly, and the circulator does not appear, then the signatures will be invalidated.  If the Party is willing to take that risk as a tradeoff for collecting signatures more efficiently, it should be permitted to do so.

### III. Connecticut's in-state residency requirement is unconstitutional both as applied to the Party and on its face.

Because the Secretary has failed to prove that Connecticut's in-state residency requirement is narrowly tailored to serve a compelling state interest, the statute fails strict scrutiny and is unconstitutional.  The Secretary nonetheless claims that the Court should decline

to strike down the statute on its face because, even if unconstitutional as applied, the provision still has "a plainly legitimate sweep." ECF 20 at 8, citing *Wash. State Grange v. Wash. Repub. Party*, 552 U.S. 442, 455 (2008). This claim is meritless. The Connecticut statute at issue places a categorical restriction on political speech, and the Secretary makes no attempt to show how the statute would satisfy strict scrutiny in *any* application. Courts have routinely struck down similar residency requirements on their face. *Lerman*, 232 F.3d at 153 (New York witness residency requirement "violates the First Amendment on its face"); *see also Libertarian Party of Va. v. Judd*, 718 F.3d 308, 312 n.4 (4th Cir. 2013) (striking down Virginia residency requirement on its face because the "the statute's very existence may cause others not before the court to refrain from constitutionally protected speech"). This Court should do the same.[5]

## Conclusion

For the foregoing reasons, and those set forth in the Verified Amended Complaint, the Party's opening brief, and the Affidavit of Andrew Rule submitted herewith, the Court should grant the Party's Motion for a Temporary Restraining Order and Preliminary Injunction.

---

[5] The Secretary claims that Connecticut's statute has a "plainly legitimate sweep" because it can be "constitutionally applied to minor parties in Connecticut *who do not seek to retain out of state circulators*." ECF 20 at 8 (emphasis added). This argument reflects a fundamental misunderstanding of how First Amendment facial challenges work. The fact that some people may have no interest in engaging in prohibited speech does not save a speech restriction from facial invalidity. That is why the "crush video" statute in *United States v. Stevens*, 559 U.S. 460 (2010), was facially unconstitutional, notwithstanding the fact that hundreds of millions of Americans have no interesting in videotaping the maiming of animals. It is also why the Supreme Court struck down the Stolen Valor Act on its face, even though most Americans have little interest in impersonating Medal of Honor winners. *See United States v. Alvarez*, 132 S. Ct. 2537 (2012). So too in this case, the fact that some minor parties may have no desire to use out-of-state circulators, *see* ECF 20 at 8, does not render Connecticut's restriction of core political speech any less unconstitutional on its face.

*Libertarian Party of Connecticut*

        /s/ Stanley A. Twardy, Jr.
Stanley A. Twardy, Jr. (ct05096)
*satwardy@daypitney.com*
One Canterbury Green
201 Broad Street
Stamford, CT 06901
(203) 977-7300
(203) 977-7301 (fax)

and

Daniel E. Wenner (ct27852)
*dwenner@daypitney.com*
John W. Cerreta (ct28919)
*jcerreta@daypitney.com*
Daniel J. Raccuia (ct29535)
*draccuia@daypitney.com*
Day Pitney LLP
242 Trumbull Street
Hartford, Connecticut 06103
(860) 275-0100
(860) 275-0343 (fax)

and

Dan Barrett (ct29816)
*dbarrett@acluct.org*
ACLU Foundation of Connecticut
330 Main Street
Hartford, Connecticut 06106
(860) 523-9146 x.807
(860) 586-8900 (fax)

- 9 -

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the above date a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

      /s/ Daniel J. Raccuia